# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHIGAN AMERICAN FEDERATION OF
STATE COUNTY AND MUNICIPAL
EMPLOYEES, COUNCIL 25, AFL-CIO AND ITS
AFFILIATED LOCAL 1640,

        Plaintiff,

vs.                              Case No. 2:08-cv-12495
                                      Hon. George Caram Steeh

MATRIX HUMAN SERVICES, VISTA NUEVAS
HEAD START AND PRESIDENT/CHIEF
EXECUTIVE OFFICER, DR. MARCELLA
WILSON,

        Defendants.

---

## DEFENDANTS' MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Defendants, MATRIX HUMAN SERVICES, VISTA NUEVAS HEAD START, and PRESIDENT/CHIEF EXECUTIVE OFFICER, DR. MARCELLA WILSON, by and through their attorneys, ROBERT E. DAY P.C. and ABBOTT NICHOLSON, P.C., (i) pursuant to Fed. R. Civ. P. 65(b)(3), hereby move this Court for entry of an order dissolving the temporary restraining order entered in this case, prior to removal, by the Wayne County Circuit Court; and (ii) hereby respond in opposition to the Motion for Preliminary Injunction.

Pursuant to E.D.Mich. LR 7.1, concurrence in the motion has been requested of opposing counsel, but concurrence has not been granted; therefore, it is necessary to file this motion.

In support of this motion, Plaintiff submits and relies upon the attached brief.

WHEREFORE, Defendants MATRIX HUMAN SERVICES, VISTA NUEVAS HEAD START, and PRESIDENT/CHIEF EXECUTIVE OFFICER, DR. MARCELLA WILSON respectfully request that this Honorable Court (i) dissolve the temporary restraining order entered in this case, (ii) deny the Plaintiff's motion for preliminary injunction, and (iii) grant such further relief as this Court deems just and proper in the circumstance.

Dated:  June 13, 2008

Respectfully submitted,

ROBERT E. DAY PC
By:      /s/ Robert E. Day (P 12579)
Attorneys for Defendants
300 Stroh River Place, Suite 5600
Detroit, Michigan  48207
(313) 259-1770
(313) 259-1605 fax
day@rdaypc.com

and

ABBOTT NICHOLSON, P.C.
By:      /s/ Michael R. Blum (P 39976)
Co-Counsel for Defendants
300 River Place, Suite 3000
Detroit, Michigan 48207-4225
(313) 566-2500
(313) 566-2502 fax
mrblum@abbottnicholson.com

227420:1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHIGAN AMERICAN FEDERATION OF
STATE COUNTY AND MUNICIPAL
EMPLOYEES, COUNCIL 25, AFL-CIO AND ITS
AFFILIATED LOCAL 1640,

        Plaintiff,

       vs.                            Case No. 2:08-cv-12495
                                      Hon. George Caram Steeh

MATRIX HUMAN SERVICES, VISTA NUEVAS
HEAD START AND PRESIDENT/CHIEF
EXECUTIVE OFFICER, DR. MARCELLA
WILSON,

        Defendants.

| | |
|---|---|
| MICHIGAN AFSCME COUNCIL 25, AFL-CIO | ROBERT E. DAY PC |
| By:    Cassandra D. Harmon-Higgins (P 68393) | By:    Robert E. Day (P 12579) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 600 West Lafayette Blvd., Suite 500 | 300 Stroh River Place, Suite 5600 |
| Detroit, Michigan 48226 | Detroit, Michigan 48207 |
| (313) 964-1711, extension 2263 | (313) 259-1770 |
| (313) 964-0230 fax | (313) 259-1605 fax |
| charmon@miafscme.org | day@rdaypc.com |
| | |
| | ABBOTT NICHOLSON, P.C. |
| | By:    Michael R. Blum (P 39976) |
| | Co-Counsel for Defendants |
| | 300 River Place, Suite 3000 |
| | Detroit, Michigan 48207-4225 |
| | (313) 566-2500 |
| | (313) 566-2502 fax |
| | mrblum@abbottnicholson.com |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISSOLVE**
**TEMPORARY RESTRAINING ORDER AND RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ ii

ISSUES PRESENTED ..................................................................................... iii

CONTROLLING AUTHORITY............................................................................ iv

INTRODUCTION ........................................................................................... 1

I.       SUMMARY OF ARGUMENT ................................................................... 1

         A.      The Case Is Set To Be Heard By Arbitrator George Roumell
                 on October 29, 2008 ................................................................ 2

         B.      The Case And The Contract Provisions.................................... 3

         C.      Plaintiffs' Contract Claims ..................................................... 4

         D.      COBRA And Contract Provisions........................................... 4

         E.      Full-Time Versus Part-Time – Article XIX.............................. 5

         F.      COBRA................................................................................ 6

         G.      New Issue Due to Temporary Restraining Order ................... 8

         H.      The Status Quo As Of June 1, 2008/Employee Partial Self-Pay. .......... 9

II       LEGAL ARGUMENT.............................................................................10

         A.      Posture Of The Case - Removal .............................................10

         B.      The State Court Temporary Restraining Order (TRO)..........12

         C.      The Temporary Restraining Order (TRO) must be resolved.................12

         D.      Probability Of Success On The Merits ...................................13

         E.      The Delay In These Proceedings ...........................................14

         F.      Adequate Remedy At Law......................................................14

         G.      There Are Difficulties In Enforcing Equitable Relief ...........15

III.     CONCLUSION.......................................................................................15

# INDEX OF AUTHORITIES

## *CASES*

*Teamsters Local #174 v Lucas Flower Co.*
*369 U.S. 95 (1962)* ...................................................................................................... 10

*Textile Workers v Lincoln Mills*
*353 U.S. 448 (1957)* .................................................................................................... 10

*Avco Corp. v Arrow Lodge Machinists Local #735*
*3990 U.S. 557 (1968)* .................................................................................................. 10

*Boys Markets, Inc. v Retail Clerks*
*398 US 235, 74 LRRM 2257 at footnote 8* .................................................................. 12

*Aluminum Workers International Union, AFL-CIO Local #215 v Consolidated Aluminum*
*Corporation*
*696 F.2d 437 (6th Cir. 1982)* .................................................................................. v, 14


## *FEDERAL STATUTES AND REGULATIONS*

Federal Rules of Civil Procedure 65 ............................................................................ 12

Labor Management Relations Act §301 .............................................................. v, 1, 10, 11

Norris-LaGuardia (Anti-Injunction) Act, 29, U.S.C. §101.................................... v, 1

Norris-LaGuardia (Anti-Injunction) Act, 29, U.S.C. §108................................... 12, 13

Norris-LaGuardia (Anti-Injunction) Act, 29, U.S.C. §185................................... v, 1, 11

Norris-LaGuardia (Anti-Injunction) Act, 29, U.S.C. §1007................................ 11

Norris-LaGuardia (Anti-Injunction) Act, 29, U.S.C. §1441(a) ......................... 10

29 U.S.C. 1165(a)(1) ................................................................................................ 7, 9


IRC 4980 B(f)(5) ....................................................................................................... 7,9

## ISSUES PRESENTED

1.      Whether the issuance of the Temporary Restraining Order issued by the Wayne County Circuit Court was improper under anti-injunction provisions of the Norris LaGuardia Act 29 U.S.C. §104 because it undermines the integrity of the arbitral process.

> Plaintiffs presumably say "No"
> Defendants say "Yes"

2.      Whether the issuance of the Temporary Restraining Order by the Wayne County Circuit Court was improper under the Norris-LaGuardia Act because no adequate security was given by Plaintiffs' prior to its issuance.

> Plaintiffs presumably say "No"
> Defendants say "Yes"

3.      Whether injunctive relief is improper in this case because Plaintiffs cannot demonstrate that the termination of insurance benefits at layoff during the summer recess would cause irreparable harm to the arbitral process.

> Plaintiffs presumably say "No"
> Defendants say "Yes"

4.      Whether injunctive relief is improper because Plaintiffs have an adequate remedy at law through the arbitral proceedings.

> Plaintiffs presumably say "No"
> Defendants say "Yes"

## CONTROLLING AUTHORITY

### STATUTES:

Norris-LaGuardia Act, 29 U.S.C. §101 et seq.

Section 301, Labor Management Relations Act, 29 LMRA §185

### CASES:

Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America vs Lucas Flower Company, 369 U.S. 95, 82 S. Ct. 571 (1962)

- Section 301 of the NLRA requires that inconsistent state law must give way to principles of federal labor law.

Aluminum Workers International Union, AFL-CIO, Local Union No. 215 vs Consolidated Aluminum Corporation, 696 F.2d 437 (1982)

- "Section 4 of the Norris-LaGuardia Act promotes th[e] policy [of peaceful resolution of labor disputes through voluntary arbitration] by severely limiting the jurisdiction of the federal courts to intercede in labor disputes."
- "Irreparable harm is injury so great that an arbitrator's award, if forthcoming, would be inadequate to fully recompense the injured party."
- Loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for relief.

**INTRODUCTION**

Plaintiff filed this action in the Circuit Court for the County of Wayne, State of Michigan, on June 5, 2008, as Case No. 08-114371 CZ. On June 11, 2008, Defendants removed this action to the United States District Court, Eastern District of Michigan, where it is now pending. Plaintiff, according to its Verified Complaint, alleges that Defendants breached a Collective Bargaining Agreement and obtained from the Wayne County Circuit Court a Temporary Restraining Order ("TRO"). The alleged breach of contract is the subject of a grievance filed by Plaintiff and is proceeding to final and binding arbitration, and is subject to the provisions of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiff's TRO and request for preliminary injunction are precluded under the Norris-LaGuardia (Anti-Injunction) Act, 29, U.S.C. § 101.

[1]**I.    SUMMARY OF ARGUMENT.**

Loss of medical insurance benefits is avoidable, not inevitable. Plaintiffs are wrong. All consequences are entirely avoidable. Every month in Detroit employees are laid off, lose their jobs, or leave employment. In each, they had earned wages, shared premium costs for medical coverage, apply for unemployment, and opt for medical coverage continuation on a self-pay basis through COBRA. COBRA exists for that reason. In this case, the question of proper lay-off and COBRA or non-COBRA circumstance is before an arbitrator as the answer is in a collective bargaining agreement containing a grievance procedure and final binding arbitration.

---

[1] Plaintiffs' Motion for a Temporary Restraining Order, Show Cause Order and Preliminary Injunction are attached hereto for ease of reference. Those documents and important additional materials pertinent to this matter are attached as *Exhibit 4*, or to the Affidavit from the Matrix Human Services Chief Financial Officer, Peter Franklin (*Exhibit 2, attachments A-F*) and Affidavit of Debra Spring, Vistas Nuevas Head Start Director, (*Exhibit 3, attachments A-B*.)

An injunction usurps the arbitrator's function and renders a decision by this court on entitlement unnecessary and unwarranted

### A. The Case Is Set To Be Heard By Arbitrator George Roumell on October 29, 2008.

It is correct that on November 9, 2007 the Union filed a grievance (***Exhibit 4***, Exhibit F to Plaintiffs' Motion for Preliminary Injunction). The grievance pertains to Matrix not providing employer paid benefits during layoff for individuals laid off at the end of the program year 2008 and are anticipated to return to work at the beginning of the August 2008 Program Year. Such announcement had been made in late October or early November of 2007. However, it was not until January 9, 2008 that a demand for arbitration was made. On February 1, 2008, George Roumell was appointed and offered September 12th for a hearing date. (***Exhibit 1***). Before that date was secured, on February 27, 2008, the American Arbitration Association (hereinafter "AAA") advised the Employer that "a request from the Union was made to hold the matter in abeyance pending completion of an internal review process". Administration of the arbitration case was suspended at Plaintiff AFSCME's request through March 7, 2008. (***Exhibit 1***)

After the Union released its "hold" on administration of the arbitration, a hearing date of October 29, 2008, was proposed by the Arbitrator and accepted by the Employer. On April 3, 2008, a new hearing was confirmed, namely October 29th. Nothing occurred regarding this issue until the Union (Tina Geller) unilaterally and without prior discussion wrote on May 28th to AAA with a carbon copy to the Employer requesting, for the first time, that AAA reschedule this matter for an earlier date. The Employer responded in writing June 2, 2008 to AAA discussing the foregoing and objecting to changing the established hearing date, but offering to meet with the Union to negotiate a resolution of the matter beforehand. (***Exhibit 1***)

2

There is no record evidence, that the Employer in any way impeded the advancement of this case to arbitration.  In fact, the first objection presented to the timing of this matter was the unanticipated May 28, 2008 request to AAA from Tina Geller's support staff Arbitration Department, Michigan AFSCME Council #25.  The 2008 "Summer recess issue" had been known in late October/early November 2007, and now eight months after the grievance was filed, these extraordinary pleadings are in place.

### B.  <u>The Case And The Contract Provisions</u>.

Exhibit A to Plaintiffs' Verified Complaint and Motion is the current collective bargaining agreement ("Union contract").  (***Exhibit 4, Exhibit A***)  It is alleged that there is a putative breach of contract.  It is acknowledged that the question of arbitrability and substantive arbitration is for the arbitrator to decide.  The arbitration case can provide a full adequate remedy including damages for this alleged breach.  However, Defendants contend there is no contract clause, nor past practice cognizable under the contract that was breached so Defendants challenge the assertion that the Union has any probability of success on the merits of its contract claim.  Specifically, the contract requires the unit to be treated the same as management, layoff notices to be provided, and ten (10)-month employees receive fewer benefits than twelve (12)-month employees, all of which has been done.  The Union contract also specifically precludes consideration of any alleged contrary past practice.

**C.      Plaintiffs' Contract Claims.**

Plaintiffs' Verified Complaint and Motion for Preliminary Injunction only cite the three sections of the contract at Paragraphs 8, 9 and 10. Paragraph 8, of course, sets for the unit that the Union represents. Paragraph 9, citing Article XIX, does the same. Article XVIII, Section 1, is found at page 33. The dispute is whether or not the Employer has agreed to provide twelve (12) months, *i.e.* a full year of healthcare with Employer-sponsored premium coverage to ten (10)-month employees, provided the employees pay their share regardless of duration of employment.

**D.      COBRA And Contract Provisions.**

As Exhibit D to Plaintiffs' Verified Complaint and Motion demonstrates, numerous individuals have received layoff notices advising that their last day worked was June 6, 2008. (***Exhibit 4***, Exhibit D to Plaintiffs' Verified Complaint and Motion). See ***Exhibit 2-E; Peter Franklin's Affidavit***, hereinafter "PF".

The draft notifications of layoff were shown to the Union on May 15, 2008 because pursuant to the contract, Article XXIII - Layoff, at page 22, the Employer has to provide at least ten (10) working days' notice of such layoff. The actual notifications of layoff issued with the payroll on May 23, 2008.

At Article XVII – Benefits, beginning on page 25, the Employer demonstrates that a person's benefit entitlement for holidays, vacations and sick time, depends upon whether an individual works ten (10) months or fifty-two (52) weeks during the Program year.

Individuals working on a ten (10)-month basis, have the option to receive their pay over ten (10) months or spread it over twelve (12) months, but in all events, the Employer remits healthcare premiums on behalf of individuals based upon the schedule they work like other

benefits.  The contract loosely distinguishes ten (10)-month personnel from full-year personnel.  (See "E" below)

The Employer contends that there is no provision of the contract requiring it to provide partial healthcare premiums during the time when employment has ended and layoff has commenced.  Further, the contract expressly prohibits the existence of past practices if it is not contained in the Agreement.  See, Article I – Recognition, Section 3. (A and B below)

### Section 3. – Waiver.

A.  The Employer and the Union acknowledge that, during the negotiations which resulted in this Agreement, each party had exercised the unlimited right and opportunity to make demands and proposals with respect to any and all lawful and proper subjects of collective bargaining.  This Agreement fully and completely alone incorporates all such understandings and agreement and supersedes all prior agreements, understandings, and past practices, oral or written, express or implied.  Accordingly, this Agreement alone shall govern the entire relationship between the parties and shall be the sole source of any and all rights which may be asserted in arbitration hereunder or otherwise and bargaining over any subject not contained in this Agreement shall not be required.

B.  By reason of the foregoing, the Employer and the Union, for the duration of this Agreement, voluntarily and unqualifiedly waive any and all rights to negotiate, discuss or bargain collectively with respect to any subject not specifically referred to or covered by this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or executed this Agreement.

E.      **Full-Time Versus Part-Time – Article XIX.**

At Article XIX, the Union cites in its pleading the definition of full-time, regular employees asserting that all individuals who work a ten (10) or twelve (12)-month schedule are full-time employees.  The Union neglects to insert Article XIX, Section 2, which defines part-time, regular employees, i.e. ten (10)-month individuals.

### Section 2. – Part-Time Regular Employees

Part-time regular employees are employees who are regularly scheduled and consistently work less than forty (40) hours per week for ten (10) months per school year.  Part-time regular employees are entitled to benefits in proportion to the percentage of time worked, provided that they meet eligibility requirements of applicable insurance carriers.   Individual letters of employment will define employment status at time of hire.

The individuals denominated in the exhibit May 15, 2008 who were laid off June 6th fall within the definition of part-time, regular employees because they work ten (10) months of the school year.

There is additionally a COBRA provision found within Article XVIII – Medical Insurance, at Section 7, which is set forth herein below.

**F.    COBRA.**

Employees who become ineligible for Matrix-provided medical, dental and vision benefits, may be entitled to purchase continuation of these benefits without interruption of coverage at a cost.

The coverage would apply under the following circumstances if the employee:

- Is terminated for a reason other than gross misconduct;

- If hours are reduced making the employee part-time and therefore not eligible for coverage;

- Is divorced or legally separated from their spouse under whose insurance they were covered;

- If spouse or parent who has carried the employee as a covered dependent goes on Medicare;

- If spouse or parent who has carried the employee as a covered dependent dies; or

- If coverage for a dependent child under the policy ends because the child is now too old to be covered under the terms of the policy or is no longer a student.

In the event of termination or reduction of hours, the Human Resources Department will inform employees of the cost and particulars of COBRA.  It is the employee's responsibility to notify the Human Resources Department of any

other events within thirty (30) days of the above events occurring.    Further information is available through the Human Resources Department.

The language provides for some of the COBRA obligations which exists in law anyway. See IRC 4980 B(f)(5), 29 USC 1165(a)(1).  It provides for healthcare continuation in the event of a reduction in hours, on a self-pay basis which is the very definition of a lay-off.  Semantically, it is the case that a ten (10)-month employee is considered part-time when a person is laid off, their hours are reduced.  More importantly, employees must receive ten (10) days' advance notice of layoff.  Pursuant to the layoff language and COBRA law, COBRA notices issue.

Attached as part of *Exhibit 3* is the past practice pertinent to ten (10)-month employees at lay off.  It is not as the Union represents in its pleadings.  Most particularly in the Summer of 2003, the Employer reduced its work school year from twelve (12) months to ten (10) months. As Peter Franklin's *Exhibit 2-D* demonstrates, this caused the filing of numerous unfair labor practices before the National Labor Relations Board.

In the Summer of 2003, the Employer laid off most of the bargaining unit and issued COBRA notices and did not offer any Employer-sponsored premiums.  See *Exhibit 3-A*, Affidavit of Debra Spring hereinafter ("DS").  When employees were recalled, healthcare premiums were soon reinstated.

From 2004-2007, the Employer offered, as a gratuity, to tender its portion of the healthcare premium during the layoff of ten (10)-month staff if the employees pre-paid their premium portion beforehand.  This is not what occurred in 2008, nor has this non-binding gratuitous gesture been offered, as announced in November, 2007.

*Exhibit 3-Attachment A* contains the background for 2004-2007.

If an employee during 2004-2007 chose not to prepay, or to not commit to prepay their premium share, a COBRA notice issued at June layoff.  At layoff, all pay and other benefits

based on a ten (10)-month employment cycle ended. From 2004-2007, while not required to do so, and as it could have done as it did in 2003, pursuant to its "no-past-practice language in Article I", the Employer voluntarily offered to provide Employer-sponsored healthcare on a current year basis. Most documents so inform that the Employer's actions were on a current, year-by-year-basis.

An Employee acknowledgement occurs usually November 1st as to ten (10)-month versus twelve (12)-month year. This is why the Employer made its announcement on or about November 1st of 2007 at the outset of its fiscal year. The school year for ten (10)-month Program employees is approximately August to June. As both this Brief and the Union's attachments to its pleading demonstrate, on or about May 15, 2008, the Employer provided advance draft layoff notices to the Union with such issuing with paychecks May 23, 2008. The first round of layoffs indeed occurred on June 6, 2008. But for the Temporary Restraining Order received by Matrix at 1:30 in the afternoon, medical, vision and dental would have been cancelled Friday, June 6th. Due to the efforts of the Chief Financial Officer, Total Health Care (hereinafter "THC"), advised Defendants that it was able to reverse the cancellation of benefits. The cut-off now needs to be at some other hour depending upon these proceedings.

G.    **New Issue Due To Temporary Restraining Order.**

On June 6, 2008, the Employer had pro-rated each employee's paycheck to pay for benefits coverage to that date and collect the employee portion of the premium. There is one (1) more check to issue to the now laid off employees raising the question of what to do with the employee premium share which has now carried forward effective June 9, 2008.

In the past if an employee during the 2004-2007 period of the summer months chose not to pre-pay or commit to prepay for that current year, their premium share, a COBRA notice

issued at layoff.  At layoff, all pay and other benefits based upon ten (10) months' employment ended.

There is a large false premise herein.  The false premise is this – that June 6th was the disaster date.  If a COBRA notice issues, it triggers self-pay of premiums.  An employee has at least sixty (60) days to decide whether to tender the entire premium and reinstate coverage.  See IRC 4980B(f)(5), 29 USC 1165(a)(1).  In this case, the first COBRA rights took traction effective June 6th.  An individual would have the right to save their insurance by tendering the premium at any time on or before August 6, 2008.  Upon return to work in August, the Employer would reinstate healthcare coverage (medical and pharmaceutical) effective on the first day of work.  The unit has had eight months from November 2007 to plan for paying their portion and the Employer's portion of the premium.

As it turns out, dental and vision do not terminate until the end of June 2008 and neither of those two benefits are referenced in the Union's pleadings or Petition for Equitable Relief.

**H.**     **The *Status Quo* As Of June 1, 2008/Employee Partial Self-Pay.** (*Exhibit 2, Attachment C*)

The bargaining unit already pays a portion of its premium.  Total Health Care contains both an HMO and a PPO.  Admittedly, COBRA would require an employee to pay the balance of what is already usually owing by the Employer.  The steps are clear:

Step 1:  In the usual case, at the first of the month, the Employer pays the full premium and the employee has its premium share deducted from their pay.

Step 2:  In this case there is first a Notice of Layoff and a COBRA notice as required by law based upon the reduction in hours.   Peter Franklin's Affidavit (***Exhibit 2 - C***) demonstrates the total summer cost if all premiums were Employer paid based on May, 2008 rates and enrollments.  The amount of the total premium to the Employer for an entire summer

with adjustments for the first six (6) days of June would be $114,430.31, of which $35,071.22 is the existing employee portion. The numbers change based upon single-person, two-person or family coverage. However, the employee has already agreed to be obligated for a share. The net balance therefore due is $79,359.09 as set forth in the chart per individual based upon their situation. Sixty-two (62) persons would need to pay $213.75 per month, almost half the unit

The dispute before the arbitrator is whether the Employer is obligated under the contract to continue its premium for June, July and August on the same basis as during the Program year.

## II.   **LEGAL ARGUMENT**

### A. **Posture Of The Case – Removal.**

In *Teamsters Local #174 v Lucas Flower Co., 369 U.S. 95 (1962)*, the Supreme Court, citing *Textile Workers v Lincoln Mills, 353 U.S. 448 (1957)* held that state courts hearing actions for breach of collective bargaining agreements must apply federal common law because of the need for federal uniformity to ensure industrial peace. The substantive law to be applied in actions under Section 301 is the same regardless of whether the suit is brought in state or federal court. Remedies in state court are not limited by the Norris-LaGuardia Act, but state court actions are cognizable under Section 301 and may be removed to federal court as the federal courts have original jurisdiction over labor agreements. Removal has occurred because Defendants contend Norris-LaGuardia Act applies and that this case does not fall within any of the narrow exceptions to the Norris-LaGuardia prohibitions against injunctions in labor disputes. *See Avco Corp. v Arrow Lodge Machinists Local #735, 3990 U.S. 557 (1968).* See Norris-LaGuardia Act, 29 U.S.C. §1441(a) which provides:

> Except as otherwise provided by Act of Congress, any civil action brought in state court in which the district courts of the United States have original jurisdiction, and may be removed by the Defendant or Defendants to the district court for the United States. . . embracing the place where such action is pending.

It is for this reason that removal is occurring on the basis that this Court would have original

jurisdiction over a Section 301 contract which establishes a federal question as a proper basis for

removal, inasmuch as Plaintiffs' entire case is simply that this is a breach of a collective

bargaining agreement.  The only contract at issue is between a Union and Employer subject to

Section 301 by virtue of the private sector status of the Employer as has been established by

Union access to the National Labor Relations Board when it received a  Certification of

Representative as well as filing numerous unfair labor practices charges asserting violations of

the Act.  See *Exhibit 2 – attachment D*.

Stated in another fashion, Plaintiffs have framed its Complaint, solely in terms of facts,

depending upon a breach of a Collective Bargaining Agreement which is a Section 301 claim.

> Sec. 301. (§ 185)  (a)  Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States without having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Defendants' Norris-LaGuardia provisions relied upon are found at 29 U.S.C.,

§1007:

> Sec. 7.  No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of witnesses in open court (with opportunity for cross-examination), in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and after findings of fact by the court, to the effect –
>
> (a)  That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the unlawful act or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
>
> (b)     That substantial and irreparable injury to complainant's property will follow;

11

(c)      That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief then will be inflicted upon defendants by the granting of relief;

(d)      That complainant has no adequate remedy at law; and

(e)      That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

**B.**    **The State Court Temporary Restraining Order (TRO).**

Thus, it is contended that the Norris-LaGuardia Act prohibitions against injunctions of labor disputes apply in this matter as no narrow exception applies, but in the alternative, if for some reason, an exception to Norris-LaGuardia exists, then traditional equitable standards must be applied including asking why it took eight (8) months to bring an action where there is an adequate remedy of law.

**C.**    **The Temporary Restraining Order (TRO) Must Be Dissolved.**

Pursuant to Federal Rule of Civil Procedure 65, the *ex parte* TRO must fail because Plaintiffs cannot prove and cannot show probability of success on the merits or irreparable injury.  Further, under Section 7 of the Norris-LaGuardia Act, a temporary restraining order shall be effective for no longer than (5) days and shall become void at the expiration of the five (5) day period.  The reason is that because there are sixty (60) days within which to elect COBRA rights, an individual at any time may reinstate their healthcare by tendering the premiums.  Secondly, pursuant to Rule 65 (B)(2), the certification by Plaintiffs' counsel that no efforts were made to give notice to were made because it is alleged that such would have caused further negative consequences.

The Supreme Court expects a Plaintiff as it stated in *Boys Markets, Inc.* v *Retail Clerks,* *398 US 235, 74 LRRM 2257 at footnote 8,* to try to resolve its disputes by making reasonable efforts, citing Norris-LaGuardia, 29 U.S.C. §108.

Section 108 provides:

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

Based upon the facts in this case, *i.e.* a November 2007 grievance, suspending processing the case, the passage of time, and an *ex parte* Temporary Restraining Order, such did not occur. It is for the reasons stated in this Brief that the Motion to Dissolve the Temporary Restraining Order is made and the Verified Complaint dismissed and Motion for Preliminary Injunction denied.

Clearly, the question of security via a bond is critical in the event the Employer fails in its attempts to dismiss these proceedings as all damages are monetary and quantifiable, and of the kind amenable to arbitration.

**D.    Probability Of Success On The Merits.**

Defendants acknowledge that this matter is properly before an arbitrator. Defendants do not agree that the alleged breach of contract can be found within the four (4) corners of this Agreement, or that past practice supports Plaintiffs' contention. Rather, the Employer contends that it has in the past issued COBRA notices (2003), but that as a gratuity in 2004-2007 it attempted to assist employees for each current year by tendering the premium of its share if the employee tendered the premium beforehand of its share.

However, the Employer further contends that under this contract and its express terms, there can be no past practice that is relevant to this proceeding because the contract precludes consideration of past practice.

E.     **The Delay In These Proceedings.**

*Exhibit 1* presents the timeline for this dispute which is eight (8) months old.  It started in November 2007; it took sixty (60) days for the Union to demand arbitration, thereafter it delayed the hearing date selection by asking the grievance to be held in abeyance, and thereafter waited yet another sixty (60) days until late May 2008 to seek a hearing date other than October 29, 2008.  For its part, the Employer has given full disclosure of its intentions, has engaged in no disingenuous behavior, and has attempted to implement the contract as it has in the past in 2008.  Further, there are no facts demonstrating that the Employer raises the delay in the proceedings by having any improper dilatory behavior on its part.  It has all been with the Union.

F.     **Adequate Remedy At Law.**

This is a contractual claim on behalf of ten (10)-month employees who have paid a share of the premium from wages.  The employees are now required to pay the balance of the premium.  This in accordance with the COBRA laws.  They have sixty (60) days to exercise this option.

The COBRA law creates sixty (60) days in order for the employee to make the decision as to whether or not their premiums must be paid and healthcare reinstituted.  While the Complaint speaks only in terms of medical coverage, also involved is vision and dental.

Paragraph 25 of the Verified Complaint thus not only inaccurately states the issue, but then admits that the potential loss of life is based upon lack of financial resources.  The pay that an employee receives is based upon hours worked and paid, not hours not worked but paid, so also does the contract provide as to benefits.  In the case *Aluminum Workers International Union, AFL-CIO Local #215* v *Consolidated Aluminum Corporation, 696 F.2d 437 (6th Cir. 1982),* the Court held that lost jobs during corporate reorganizing which may lead to

repossession, foreclosures, or injury to credit do not constitute irreparable harm, because the real issue is harm to the arbitral process.

Thus, damages at law are adequate and the burden of paying the entire premium has been set forth eight (8) months prior to these proceedings and there is another sixty (60) days available for healthcare premiums to be paid.

### G.       There Are Difficulties In Enforcing Equitable Relief.

In every situation since 2003, the employees have prepaid their premium share in return for the Employer's offer to subsidize its portion Summer healthcare.  In this case if the Employer is required to remit one hundred percent (100%) of the premiums, there is no paycheck available for reimbursement at this time.  The Employer may not have recourse against the Union.  The Employer has not deducted premium-sharing for periods beyond June 6, 2008.  The Employer does not have the cost-effective resources to initiate individual collection actions against each employee.  A change of the *status quo* would be involved at this late hour if the Employer were required to front the premium and await the employee premium share.

## III.    CONCLUSION.

It is obvious that there is an adequate remedy at law.  The total amount of the Summer premium according to ***Exhibit 2 – attachment C*** is $114,430.31 of which $35,071.27 is already owed by the employees.  The remaining Employer portion is $79,359.09.  An amount is owed anyway by the employee based upon single-person, two-person or family premiums and is known.

For the Court to disregard the eight (8) months of delay and grant the relief requested in the face of the quantifiable nature of the contract claim and the availability of eight (8) months to

date and sixty (60) more days to tender the premiums is an abuse of the Court's process and is unwarranted.  Damages at law are adequate and arbitration of these claims is appropriate.

It is prayed that the Temporary Restraining Order be dissolved and the Request for Preliminary Injunction be denied.

Dated:  June 12, 2008

Respectfully submitted,

ROBERT E. DAY PC
By:      /s/ Robert E. Day (P 12579)
Attorneys for Defendants
300 Stroh River Place, Suite 5600
Detroit, Michigan  48207
(313) 259-1770
(313) 259-1605 fax
day@rdaypc.com

and

ABBOTT NICHOLSON, P.C.
By:      /s/ Michael R. Blum (P 39976)
Co-Counsel for Defendants
300 River Place, Suite 3000
Detroit, Michigan 48207-4225
(313) 566-2500
(313) 566-2502 fax
mrblum@abbottnicholson.com

16

## CERTIFICATE OF SERVICE

Bruce Hoepner declares and says that he is not a party to the above-entitled action and that on the 13th day of June, 2008, he personally served a copy of the attached Defendants' Motion and Brief in Support of Motion to Dissolve Temporary Restraining Order and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction upon Cassandra D. Harmon-Higgins, Esq., 600 West Lafayette Blvd., Suite 500, Detroit, Michigan  48226.

Dated:  June 13, 2008                                     /s/ Bruce Hoepner

227411